UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
JOSE GARCIA                     )
                                )
          PETITIONER,           )
                                )
          v.                    )  CIVIL ACTION
                                )  NO. 08-10692-WGY
DENNIS RODEN,¹                  )
                                )
          Superintendent of     )
          MCI Norfolk,          )
                                )
          RESPONDENT.           )
_____)
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    December 3, 2009

I.   **INTRODUCTION**

Jose Garcia ("Garcia") brings this pro se petition against

then Superintendent Luis Spencer ("Respondent") seeking a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. Pet. [Doc. No. 9].

Petitioner presents eight grounds for relief. His claims,

however, actually develop but five issues: (1) whether the search

warrant was properly issued (Ground 8); (2) whether Garcia's

attorney had a conflict of interest (Ground 2); (3) whether the

evidence was sufficient to find Garcia guilty (Ground 3); (4)

_____

¹ Pursuant to Fed. R. Civ. Pro. 25(d), Dennis Roden, the
present Superintendent of MCI Norfolk is substituted for Luis
Spencer, his predecessor.

whether laboratory certificates admitted as prima facie evidence shifted the burden of proof to Garcia (Ground 6); and (5) whether Garcia was deprived of his right to confront a witness (Ground 7).

Respondent denies each of these claims. Resp. Mem. Opp. Pet. [Doc. No. 13].

### A.    Procedural Posture

A Worcester County grand jury indicted Garcia for (1) trafficking in over 200 grams of cocaine and (2) possession with intent to distribute lidocaine, a class E controlled substance. Before trial, Garcia moved to suppress evidence discovered during a warrant search at 58-60 Chatham Street, Worcester. At first the motion was granted in part and denied in part, but after the prosecution moved for reconsideration, the entire motion ultimately was denied.

After a two-day jury-waived trial Garcia was convicted of both charges. The judge granted a required finding of not guilty as to Garcia's co-defendant, Angel Bauza ("Bauza"). Garcia escaped during a break in the trial. He was apprehended and sentenced several years later. He timely appealed from his conviction. He also moved for, and was denied, a new trial. He appealed the denial. Garcia's appeal from his conviction and his appeal from the denial of new trial were consolidated. In an unpublished decision issued under Massachusetts Appeals Court

2

Rule 1:28, the Appeals Court on August 12, 2005 rejected all the issues raised by Garcia. Resp. Supp. Ans., Vol. I, Ex. G [hereinafter "Vol. __, Ex. __"]. The opinion specifically addressed three issues: the no-knock warrant, conflict of interest, and insufficiency of evidence. Id. The Massachusetts Supreme Judicial Court denied him further appellate review.

In June 2006, Garcia filed a second motion for a new trial. The judge denied it for the reasons presented in the Commonwealth's memorandum. The Appeals Court affirmed the denial in an unpublished decision on November 28, 2007. Vol. I, Ex. P. In that decision the court addressed the issue of the reliability of the confidential informant and the issue of the admission of certificates of analysis. All other issues were determined by the Appeals Court to have no merit or to fail to comply with requirements for an appellate brief. The Massachusetts Supreme Judicial Court denied further appellate review.

Garcia timely brings this petition for habeas corpus.

**B.   Facts**

On June 17, 1993 police executed a search warrant in the basement apartment and the cellar at 58 Chatham Street, Worcester. Bauza and a Spanish-speaking woman were present in the cellar during the search, claiming that they were doing laundry. Over 200 grams of cocaine and over 500 grams of lidocaine were discovered in the ceiling of the cellar. Money in small

denominations, an electronic digital scale, rubber bands, and ziploc baggies were also found.

The basement apartment was rented by Garcia's uncle, Raul. At the time of the search, Garcia was in the basement apartment, where he then resided. Garcia's personal papers were discovered in a bureau drawer in what appeared to be a man's bedroom. Several items that indicated drug dealing activity, such as crib notes, a sifter, surgical masks, $4,000 in small denominations, and cut corner bags, were discovered in the apartment. No drugs were found in the apartment. In close proximity to Garcia's personal papers, a bag with an Apple insignia was found. It matched the baggies found in the cellar.

### C.  Federal Jurisdiction

This Court may exercise jurisdiction over Garcia's petition for habeas corpus pursuant to 28 U.S.C. § 2254.

## II. ANALYSIS

### A.  Standard of review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The habeas corpus petition should be granted if the state court

decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Williams v. Taylor, 529 U.S. 362, 405-406 (2000) explains that a state court decision is "contrary to" clearly established federal law if "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court] precedent." Id. A state court's decision that is "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to Supreme Court case-law satisfies the "contrary to" test. Id.

An unreasonable application of federal law occurs when a state court "identifies the correct governing legal principle from [U.S. Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The unreasonable application must be more than an erroneous one, and must be objectively unreasonable. Id. at 409-10.

**B.  Garcia's claims**

   1.   Search warrant (Ground 8)

Garcia claims that there was an insufficient basis to issue a no-knock warrant and that the warrant was issued upon

5

information from an unreliable informant who had no personal
knowledge. Pet. at 11, 41. He also alleges, without further
detail, that he was denied the appointment of counsel. Id. at 12.

With regard to Fourth Amendment rights, "a federal habeas
corpus court cannot revisit a state court's disposition" except
where the prisoner "had no realistic opportunity to litigate his
Fourth Amendment claim fully and fairly in the state system."
Sanna v. DiPaolo, 265 F.3d 1, 8 (1st Cir. 2001) (summarizing the
holding in Stone v. Powell, 428 U.S. 465 (1976)). "[A] full and
fair opportunity to litigate means that the state had made
available to defendants a set of procedures suitably crafted to
test for possible Fourth Amendment violations."  Sanna, 265 F.3d
at 9 (citing Pigone v. Sands, 589 F.2d 76, 79 (1st Cir. 1978))
(internal quotation omitted).

In this case, Garcia had the opportunity to fully and fairly
litigate his Fourth Amendment claims in state court. Throughout
these proceedings, he was represented by counsel.[2] His motion to
suppress on the ground of the alleged inadequacy of the warrant

---

[2] The evidentiary hearing transcript, although incomplete,
shows that Garcia was represented by attorney Frank Manni. Vol.
II, Ex. A at 1. (It was later determined by the Superior Court
Justice Howard Whitehead that in fact John Manni was Garcia's
trial counsel, notwithstanding that Frank Manni formally appeared
on Garcia's behalf. Vol. I, Ex. C at 7-8.). The appeal
questioning the legitimacy of the warrant was prepared by
attorney Matthew S. Robinowitz. Vol. I, Ex. E at 38. Garcia filed
his second motion for new trial and subsequently appealed from
the denial of this motion. On those occasions he was acting pro
se. Vol. I, Exs. K, N.

was denied after an evidentiary hearing and serious consideration
by the trial judge. The issue of the no-knock warrant was brought
up again during the appeal from his conviction. The Appeals Court
noted that the confidential informant's statement to the police
that she had seen a handgun at Petitioner's apartment, Vol. I,
Ex. G at 2, was sufficient to obtain a no-knock warrant. <u>Id.</u> at
3. Furthermore, in his second motion for a new trial, Garcia
acting pro se, attempted to undercut the confidential informant's
reliability. Affirming the denial of his motion, the Appeals
Court stated that these allegations were without any support in
the record, and that the informant had personal knowledge
regarding the drugs and was reliable because she had previously
provided information resulting in convictions. Vol. I, Ex. P at
1.

Garcia fails to prove by clear and convincing evidence that
the Appeals Court has in any way mischaracterized the evidentiary
record or misapplied federal law as declared by the Supreme
Court.

    2.   Conflict of interest (Ground 2)

Garcia alleges that because his attorney also represented
his co-defendant Bauza, the attorney was acting with a conflict
of interest, and thus Garcia suffered from ineffective assistance
of counsel. Pet. at 12-16. Garcia raised this issue in his motion
for a new trial. The Superior Court denied Garcia's claim, Vol.

7

I, Ex. C, and the Appeals Court affirmed, Vol. I, Ex. P.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate defective performance of counsel and prejudice resulting therefrom. Strickland v. Washington, 466 U.S. 668, 687 (1984). The Sixth Amendment protects a defendant against the simultaneous representation of conflicting interests. Cuyler v. Sullivan, 446 U.S. 335, 356 (1980) (Marshall, J., concurring in part dissenting in part), but "multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest." Id. at 348 (referring to Holloway v. Arkansas, 435 U.S. 475, 482 (1978) (joint representation not a per se violation of Sixth Amendment)). "An actual conflict of interest negates the unimpaired loyalty a defendant is constitutionally entitled to expect and receive from his attorney." Cuyler, 446 U.S. at 356. Therefore, when counsel actively represents conflicting interests and an actual conflict of interest adversely affects counsel's performance, prejudice is presumed. Id. at 350.

In Garcia's case, the Superior Court appropriately noted that the mere showing of joint representation is not enough to show ineffective assistance of counsel because joint representation does not constitute a per se conflict of

interest.[3] Vol. I, Ex. C at 8-9.  The Appeals Court explained that no actual conflict existed because the defendants did not exhibit contrary lines of defense.[4]  That court noted that Garcia's defense tactic was not to blame Bauza but to point out that there was not enough evidence to prove his guilt beyond a reasonable doubt. The court also stated that even assuming that Garcia's counsel had tried to defend Garcia by inculpating Bauza, there was no actual prejudice to Garcia, because such a defense would not relieve Garcia of guilt regarding co-possession of drugs.  Vol. I, Ex. G at 7-8.  The court stated that Garcia showed neither actual conflict, nor prejudice that resulted from potential conflict.  Id. at 4-5.

The Appeals Court decision rejecting Garcia's claims is supported by state case-law that accords with United States Supreme Court cases. Since Garcia failed to show that the decision was contrary to, or an unreasonable application of, the law established by the Supreme Court, habeas relief cannot be granted on this ground of his petition.

---

[3] The Superior Court cited Commonwealth v. Adams, 374 Mass. 722, 731 (1978) (joint representation not per se violation).

[4] The Appeals Court noted that under Massachusetts law, representing two defendants who have inconsistent or contradictory lines of defense is an example of an actual conflict. See Commonwealth v. Michel, 381 Mass. 447, 453 (1980); Commonwealth v. Leslie, 376 Mass. 647, 653 (1978).

3.    Insufficiency of evidence claim (Ground 3)

Garcia claims that there was not enough evidence to prove that he constructively possessed the drugs discovered in the cellar. Pet. at 18-19.

The Supreme Court, in <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 324 (1979), held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." With regard to sufficiency claims, the issue is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319 (emphasis in original). Evaluating the evidence is the responsibility of the trier of fact and not the reviewing court. <u>Jackson</u>, 443 U.S. at 319.

"Habeas corpus cases involve layering two standards": the AEDPA standard and the underlying standard applying the constitutional right asserted.   <u>Hurtado</u> v. <u>Tucker</u>, 245 F.3d 7, 16 (1st Cir. 2001).  The inquiry of this Court is, thus, "not whether the Appeals Court was correct in ruling the evidence of constructive possession sufficient to supply a conviction beyond reasonable doubt, but whether its judgment amounted to a decision

that unreasonably applied <u>Jackson</u>." <u>Pimental</u> v. <u>Spencer</u>, No. 07-10122 LEXIS 39991 at *3 (D. Mass. Aug. 30, 2008) (Zobel, J.)[5]

In the decision affirming Garcia's conviction, the Appeals Court stated:

> [T]here was evidence that the defendant resided at 58 Chatham Street; several items of identification belonging to the defendant (such as photo identification and a social security card) were found there along with an envelope addressed to the defendant at 58 Chatham Street. Furthermore, the apple insignia on a Ziploc bag found in a pair of men's pants that were inside the defendant's apartment matched the apple insignia on the bags of drugs retrieved from the cellar. Other items consistent with the drug trade were also found in the defendant's apartment,

---

[5] In <u>Hurtado</u>, the First Circuit presented the following guidelines for evaluating the unreasonableness of the state court's decision:

> (1) The focus of the inquiry is on the state court decision;
>
> (2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to "the totality of the evidence" in evaluating the state court's decision;
>
> (3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;
>
> (4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and
>
> (5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.

<u>Hurtado</u>, 245 F.3d at 18.

including two surgical masks, crib notes, and a sifter.

Vol. 1, Ex. G at 9.  The court stated that the above evidence,
plus the fact that Garcia had access to the cellar, allowed the
fact-finder to infer Garcia's involvement in the drug dealings.
Id. at 8.

At the trial, police officers testified about executing the
search warrant for the basement apartment on 58 Chatham Street
and the cellar under 58-60 Chatham Street. In numerous locations
in the cellar, narcotics with various paraphernalia indicating
drug trading were found.

In the washroom's drop ceiling, Vol. I, Ex. C at 62:9-16, a
bag was found that contained other bags filled with various
substances, id. at 63:17-20.  These substances were confirmed to
be cocaine, id. at 65:9,[6] and lidocaine.[7]  In another area of the
washroom's ceiling, more bags of cocaine were found,[8] id. at
225:22-226:2, along with the sum of $1,500, id. at 224:15.
Another large sum of money, $1,375 in low denominations which was
wrapped in a newspaper, was discovered in the ceiling of the

---

[6] The bags of cocaine weighed respectively 167 grams, id. at
65:11, 10.68 grams, id. at 70:1, 9.63 grams, id. at 70:13, and
6.80 grams, id. at 71:7.

[7]  The bags of lidocaine weighed respectively 241 grams, id.
at 70:21, 274 grams, id. at 71:2, and 56.48 grams, id. at 71:11.

[8] The bags of cocaine weighed respectively 0.72 grams and
18.07 grams.  This resulted in a total of 212.90 grams of cocaine
and 571.48 grams of lidocaine found in the cellar.

12

cellar.  Id. at  169:10-11.  An electronic digital scale was found in another part of the drop ceiling in the cellar. Id. at 72:5. In a bag on the stove in the area of the stairway leading up to 60 Chatham Street, rubber bands, id. at 50:11, numerous quarter-inch ziploc baggies, id. at 52:22, and jars of lactose and thistle, id. at 55:20, were found. Id. at 47:19-24; id. at 50:12.

Officer McGee testified that at the time of the search, Garcia was found at 58 Chatham Street in the basement apartment's living room.  Id. at 207:18.  In Garcia's pants pocket, the officer found $50, id. at 210:22, and a key that fit the lock in the back door of the apartment leading to the cellar area. Id. at 208:6-209:1.

In what appeared to be a man's bedroom (the "Man's Bedroom") of the basement apartment, id. at 172:18, $4,000 in low denominations was retrieved from the pocket of a jacket in the closet.  Id. at 173:5.  In the top drawer of the bureau, crib notes were found, id. at 173:23, along with Garcia's personal papers, including a photo ID from New York, an envelope with a letter from an attorney addressed to Jose Garcia, Garcia's social security card, and an income tax return from New York in Garcia's name. Id. at 178:3-179:19. In the second drawer in a men's pant pocket, a ziploc bag with the Apple insignia stamped on it, numerous red bags, and smaller ziploc bags were found.  Id. at

13

180:9-15.  Officer Cortis testified that he compared the Apple logo on the bag from men's pant pocket with the other items retrieved from the cellar, and stated that they appear to bear the same logo.  Id. at 181:2-9.  In the bedroom, cut corner bags were found.  Id. at 181:23.  Moreover, in the trash bag located in the living room, more crib notes were retrieved, id. at 241:24-242:24, along with numerous surgical masks. Id. at 247:13. A sifter was found in the kitchen. Id. at 24:12.

As Garcia did not physically possess the drugs, the prosecution relied upon the theory of constructive possession. Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004). "[K]nowledge coupled with the ability and intention to exercise dominion and control" demonstrates constructive possession. Commonwealth v. Brzezinski, 405 Mass. 401, 409,(1989) (quoting Commonwealth v. Rosa, 17 Mass. App. Ct. 495, 498 (1984)). "The Commonwealth may prove that the defendant had knowledge of the contraband by circumstantial evidence, if the evidence warrants a reasonable inference to that effect." Commonwealth v. Garcia, 409 Mass. 675, 686 (1991). Access indicates an ability to exercise dominion and control. Commonwealth v. Gonzalez, 42 Mass. App. Ct. 235, 237 (1997).  Given the evidence supporting involvement in drug dealing, an inference of intent to exercise dominion and control is warranted.  Id.

Based on the evidence presented during the trial, a rational

14

trier of fact could have found beyond a reasonable doubt that Garcia constructively possessed the narcotics discovered in the cellar.  The crib notes, surgical masks, sifter, $4,000 in low denominations, and cut corner bags discovered in the basement apartment indicated drug dealing activity at the residence.  At the time of the search, Garcia was residing in the basement apartment and was found in the living room.  His personal papers (ID, letter from a lawyer, social security card, and income tax return) were found in a bureau drawer in the Man's Bedroom. Moreover, a ziploc bag with an Apple insignia matching bags found in the cellar was discovered in the pocket of men's pants found in the same bureau as Garcia's personal papers. Upon this evidence, it reasonably can be inferred that Garcia knew about the narcotics in the cellar.

In addition, Garcia possessed a key that fit the apartment's back door leading to the cellar area. Thus, he was able to access the cellar any time he wanted.[9] Moreover, it can be inferred from the presence of drug paraphernalia that Garcia was involved in drug dealing and intended to exercise dominion and control over the drugs in the cellar.

Mindful of Hurtado's guidelines, the Appeals Court concluded

---

[9] It is unclear whether he was the only one who had access to the cellar. Even so, "[t]hat others in the building also had access to the basement and might have hidden drugs in the basement does not require a finding of not guilty." Commonwealth v. Velazquez, 48 Mass. App. Ct. 147, 150 (1999).

that it was not an unreasonable application of the <u>Jackson</u> standard for the fact-finder to find Garcia guiltly beyond a reasonable doubt.  Therefore, Garcia's petition for habeas corpus relief must be denied on this ground.

   4.   Shifting burden of proof (Ground 6)

In Ground Six of his petition, Garcia alleges that because the laboratory reports were admitted as prima facie evidence, the burden of proof shifted to him, and therefore, he was denied both his presumption of innocence and due process rights.  Pet. at 28.[10]

His argument, however, disregards clear case-law which states that prima facie evidence does not shift the burden of proof.  In criminal cases, a defendant is presumed to be innocent until the government proves beyond a reasonable doubt each element of the crime.  <u>Clark</u> v. <u>Arizona</u>, 548 U.S. 735, 766 (2006) (citing <u>Patterson</u> v. <u>New York</u>, 432 U.S. 197, 210-11 (1977)).  It is commonplace that evidentiary inferences operate in criminal trials.  In <u>Country Court</u> v. <u>Allen</u>, 442 U.S. 140, 156 (1979), the Supreme Court stated that "the ultimate test of any device's constitutional validity in a given case [is that] the device must

---

[10] Garcia also claims that the employees of University of Massachusetts who conduct criminal examination of drugs are inherently biased toward the Commonwealth because the University is maintained by the Commonwealth. Pet. at 30, 31. Garcia never develops this claim with supporting data or reasoned argumentation.

not undermine the factfinder's responsibility at trial, . . . to find the ultimate facts beyond reasonable doubt."  An "entirely permissive inference or presumption . . . allows - but does not require - the trier of fact to infer the elemental fact from proof . . . of the [prima facie evidence] and . . . *places no burden of any kind on the defendant*."  Id. at 157 (emphasis added).  "[T]his permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof . . . ."  Id. (citations omitted).  Compare Sandstrom v. Montana, 442 U.S. 510, 524 (1979) (mandatory evidentiary presumption in jury instructions, which operates to relieve the government of its burden of proof, violates due process) with Francis v. Franklin, 471 U.S. 307, 314 (1985) (mandatory presumption requires a jury to infer the presumed fact upon the proof of predicate facts; permissive inference does not require the jury to come to a specific conclusion).

Section 13 of Massachusetts General Law chapter 111, establishes that the certificate of the result of the analysis prepared by the analyst of the University of Massachusetts medical school, when properly executed, "*shall be prima facie evidence of the composition, quality, and the net weight* of the narcotic or other drug . . . ." (emphasis added).

In Commonwealth v. Maloney, 447 Mass. 557, 582 (2006) the court stated that "[i]n criminal cases, when evidence 'A' is

17

prima facie evidence of fact 'B,' then, in the absence of competing evidence, the fact finder is *permitted but not required* to find 'B' beyond a reasonable doubt" (emphasis added).  The Maloney court also explained that even though the legislature established some type of evidence as prima facie evidence, the "Commonwealth's substantive burden of proof" does not change. Id.  See also Commonwealth v. Berrio, 43 Mass. App. Ct. 836, 837-38 (1997) ("[P]rima facie evidence, like other evidence adduced at trial, may be disregarded whether or not contradicted by any evidence offered by the opposing party").  In short,the introduction of prima facie evidence in a Massachusetts criminal case carries no greater evidentiary weight than a permissive inference. Mass. G. Evid. § 302(c); Ann. G. Mass. Evid. § 302(c) and cases cited; 19 William G. Young, John R. Pollets, & Christopher Poreda, Massachusetts Practice Series, Evidence § 302.3 (2d ed. 1998).

Therefore, introduction of the certificates by the Commonwealth did not shift the burden to Garcia. On this ground Garcia cannot show he is in custody in violation of federal law.

5.    Confrontation of the chemist (Ground 7)

Garcia claims that the certificates of laboratory tests showing the composition and weight of contraband retrieved in his case are not business records and ought not here have been admitted in evidence pursuant to the business record exception.

18

Pet. at 35.[11] He claims that because the certificates were admitted in evidence without live testimony of the chemist who conducted the test, he was deprived of his rights under the Confrontation Clause of the Sixth Amendment, and ought therefore be granted habeas corpus relief. Garcia is correct as to the law. Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009). Whether he ought be granted habeas relief is something else again.[12]

Respondent argues that the Appeals Court decision disposing of this aspect of Garcia's claims grounded on Commonwealth v. Verde, 444 Mass. 279 (2005),[13] was not contrary to, or an unreasonable application of federal law clearly established by the Supreme Court, notwithstanding the Supreme Court's later decision in Melendez-Diaz. In his brief before the outcome of

---

[11] This is a pro se petition. The Court assumes (as did the Commonwealth in its responsive papers) that Garcia is challenging the constitutionality of Mass. Gen. Laws ch. 111 § 13. This statute actually constitutes a Massachusetts legislative exception to the rule against hearsay for a certain class of government reports. See Mass. G. Evid. § 803(8)(c).

[12] The presently scant literature in Massachusetts concerning Melendez-Diaz suggests it has rather sweeping effects. Christina Miller & Michael D. Ricciuti, Crawford Comes to the Lab: Melendez-Diaz and the Scope of the Confrontation Clause, Boston B.J. 13 (Fall 2009); David E. Frank & Kimberley Atkins, Dismissals Feared in Wake of Landmark Lab Report Decision, 37 Mass. Lawyers Weekly 1873 (2009).  The reality is more nuanced.

[13] In that case, the Supreme Judicial Court of Massachusetts reasoned that the certificates of analysis were "akin to a business or official record, which the [Supreme] Court stated was not testimonial in nature" and were "well within the public records exception to the confrontation clause." Verde, 444 Mass. at 284 (citing Crawford, 541 U.S. 36 (2004)).

Melendez-Diaz was known,[14] Respondent argues that the holding in
Melendez-Diaz would not change the analysis in Garcia's case
because the "clearly established federal law" clause in AEDPA
refers to the law in existence at the time the state court
decision was delivered.  Resp. Mem. Opp. Pet. at 25 n.16 (citing
Williams v. Taylor, 529 U.S. 362, 412).

It is true, as the Respondent argues, that in Crawford the
Supreme Court refused to define the line between testimonial and
non-testimonial statements, 541 U.S. at 68. The Supreme Court
explained that affidavits along with "statements that were made
under the circumstances which would lead an objective witness
reasonably to believe that the statement would be available for
use at a later trial" belonged to the core class of testimonial
statements covered by Confrontation Clause. Id. at 51-52.

The initial question, therefore, is whether Crawford so
clearly foreshadowed Melendez-Diaz that the contrary holding of
the Massachusetts Supreme Judicial Court in Commonwealth v. Verde
was an unreasonable application of federal law already clearly
established by the Supreme Court in Crawford. This Court rules
that it was.

Commonwealth v. Verde was controversial from the moment it
was handed down. Hinojos-Mendoza v. People, 169 P.3d 662, 666-67

---

[14] Oddly, Respondent has not supplemented his brief nor ever
called this important supplementary authority to the attention of
the Court.

(Colo. 2007) ("[The] historic business records hearsay exception does not mean that any document which falls within the modern-day business records exception is automatically nontestimonial."); State v. Johnson, 982 So. 2d 672, 680-81 (Fla. 2008) (holding that lab reports are "accusatory" and subject to confrontation clause); Jackson v. State, 891 N.E.2d 657, 660-61 (Ind. Ct. App. 2008) (finding that lab reports are the "functional equivalent of an affidavit" in place of live testimony); State v. Laturner, 163 P.3d 367, 377 (Kan. App. Ct. 2007) (determining that statements in lab report were scientist's testimony); State v. Caulfield, 722 N.W.2d 304, 309 (Minn. 2006) ("[Verde] wrongly focus[es] on the reliability of the reports."); State v. March, 216 S.W.3d 663, 666 (Mo. 2007) ("[Laboratory reports] constitute a core testimonial statement"); 2 Barbara E. Bergman & Nancy Hollander, Wharton's Criminal Evidence § 6:25 (15th ed. 2008) ("[D]ocuments made for the purpose of producing evidence for litigation should be considered testimonial."); 4 Michael H. Graham, Handbook of Federal Evidence § 802:2.2 (6th ed. 2009) ("[Verde] erroneously focus[es] on the reliability of the reports and whether the reports fall within the business or public records hearsay exceptions."); 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:91 (3d ed. 2009)(submitting that lab reports which are prepared for litigation cannot fall under business or public record hearsay exceptions); 1 Gerald F. Uelmen & Victor G.

Haddox, <u>Drug Abuse and the Law Sourcebook</u> § 4:3 (2009)
("[R]eports prepared by government officials specifically to
prove a charged offense in court [might be] testimonial."); 30A
Charles Alan Wright & Kenneth W. Graham, <u>Federal Practice and
Procedure</u> § 6371.2 (2009) (arguing that "courts should worry more
about depriving the defendant of the opportunity to cross-examine
crime lab 'junk scientists'" instead of focusing on reliability);
Jerome C. Latimer, <u>Confrontation after Crawford: the Decision's
Impact on How Hearsay Is Analyzed under the Confrontation Clause</u>,
36 Seton Hall L. Rev. 327, 382-84 (2006) (reasoning that courts,
such as in <u>Verde</u>, create exceptions for largely pragmatic
reasons); Jennifer L. Mnookin, <u>Expert Evidence and the
Confrontation Clause after Crawford v. Washington</u>, 15 J.L. &
Pol'y 791, 832 (2007) (arguing that lab reports, even if
characterized as business records, are testimonial because they
are prepared for the purpose of prosecution); Christopher B.
Mueller, <u>Cross-examination Earlier or Later: When Is it Enough to
Satisfy Crawford?</u>, 19 Regent U. L. Rev. 319, 356 (2007) (showing
astonishment that <u>Verde</u> holds lab reports non-testimonial); Julie
A. Seaman, <u>Triangulating Testimonial Hearsay: the Constitutional
Boundaries of Expert Opinion Testimony</u>, 96 Geo. L.J. 827, 844
(2008) (questioning <u>Verde</u>'s rejection of confrontation rights
regarding lab reports); Joe Bourne, Note, <u>Prosecutorial Use of
Forensic Science at Trial: When Is a Lab Report Testimonial?</u>, 93

Minn. L. Rev. 1058, 1074-75 (2009) ("[<u>Verde</u>] appl[ies] Roberts under the nominal guise of applying Crawford."); Cyrus P.W. Rieck, Note, <u>How to Deal with Laboratory Reports under Crawford v. Washington: a Question with No Good Answer</u>, 62 U. Miami L. Rev. 839, 908 (2008) (explaining that despite <u>Crawford</u>'s opaqueness, courts finding lab reports testimonial appear to be more correct); John M. Spires, Note, <u>Testimonial or Nontestimonial? The Admissibility of Forensic Evidence after Crawford v. Washington</u>, 94 Ky. L.J. 187, 203-204 (2005) (reasoning that lab reports are not neutral facts, and testimony of a technician should be treated similarly to the testimony of an eyewitness); Craig M. Bradley, <u>Confronting Scientific Tests</u>, Trial, Dec. 1 2008, at 57 (explaining that under <u>Crawford</u> lab reports are clearly testimonial);  Gerald F. Uelmen, <u>Motions FYI: Admissibility of Lab Reports after Crawford v. Washington</u>, Champion, Sept./Oct. 2005, at 67 (describing lab reports as clear matters of opinion and thus arguing that <u>Verde</u> is "dead wrong" on that issue); Steven Yermish, <u>Crawford v. Washington and Expert Testimony: Limiting the Use of Testimonial Hearsay</u>, Champion, Nov. 2006, at 13 (assuming that all business records are by definition non-testimonial is wrong).

Indeed the Supreme Court itself noted that <u>Melendez-Diaz</u> "involved little more than the application of [the court's] holding in <u>Crawford</u>." <u>Melendez-Diaz</u>, 129 S. Ct. at 2542. It

stated that "[t]here is little doubt that the documents at issue in this case fall within the 'core class of testimonial statements'" and that, although "denominated by Massachusetts as 'certificates,' they [were] quite plainly affidavits: 'declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths.'" Id. at 2532. But see Magruder v. Commonwealth, 275 Va. 283 (2008) cert granted sub nom. Briscoe v. Virginia, 129 S. Ct. 2858 (2009) (re-examining whether prosecutor who introduced certificate of forensic laboratory analysis without presenting testimony of analyst who prepared certificate, violated defendant's Sixth Amendment right of Confrontation). The Supreme Court also noted that "under Massachusetts law the *sole purpose* of [these certificates] was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance." Melendez-Diaz, 129 S. Ct. at 2533 (emphasis in original). Emphasizing that its holding was not new, the Supreme Court stated that "under our decision in Crawford the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for the purposes of the Sixth Amendment." Id. See also Harvard Law Review Association, The Supreme Court 2008 Term: Leading Cases, 123 Harv. L. Rev. 202, 204 (2009).

Melendez-Diaz renders unconstitutional the decision of the Massachusetts Supreme Judicial Court in Verde, and, it follows,

24

taints the analysis of the Appeals Court in Garcia's case.  Under
Crawford, the certificates are, and regardless of Massachusetts
case law were, testimonial.  Garcia thus had the right to
confront the chemist.  Unlike Melendez-Diaz, however, Garcia's
counsel never sought actually to confront the chemist.  The
burden of raising the Confrontation Clause objection is always on
defendant.  Melendez-Diaz, 129 S. Ct. at 2541.

Garcia's habeas claim here turns out to be based on the
alleged ineffective assistance of defense counsel rather than on
a violation of the Confrontation Clause.

To show ineffective assistance of counsel, Garcia must meet
the Strickland test, that is, he must show deficiency in his
lawyer's performance and prejudice resulting therefrom.  Such
deficiency occurs when an attorney's performance is "so inferior
as to be objectively unreasonable." United States v. McGill, 11
F.3d 223, 226 (1st Cir. 1993).  An attorney's assistance is
ineffective where he fails to "raise an important, obvious
defense without any imaginable strategic or tactical reasons for
the omission." Prou v. United States, 199 F.3d 37, 48 (1st Cir.
1999).  To show the resultant prejudice, "[t]he defendant must
show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome."

25

Strickland, 466 U.S. at 694.

Because this Court rules that Verde and its progeny were an unreasonable application of federal law already established by the Supreme Court in Crawford, it follows that the attorney's failure to seek to confront the chemist amounts to an objectively unreasonable performance if anything was to be gained thereby.

Here, not even a scintilla of evidence exists that the defense would have gained by calling the chemist.  Moreover, the defense attorney could reasonably expect that calling the chemist would only confirm the results of the tests.  There simply was no prejudice here.[15]  Garcia can suggest nothing more than a remote possibility that the testimony of the chemist could undermine confidence in the outcome.  He presents no affidavit that, had the chemist been called, her testimony would differ from the certificates.  Garcia's assertion to that effect is no more than simply speculative.[16]

---

[15] Massachusetts law is the same. Prejudice is not present where the defendant "[makes] no showing that any tests would have produced something that likely would have influenced the outcome of the case." Commonwealth v. Rice, 441 Mass. 291, 303 (2004) (citing Commonwealth v. Britto, 433 Mass. 596, 607 (2001)). "Unsupported speculation about possible expert evidence" does not sustain the burden to prove the prejudicial effect of an attorney's failure to call an expert. Commonwealth v. Horton, 434 Mass. 823, 834 (2001).

[16] To foreclose a second and successive petition, the Court notes that even if the drugs here now had been destroyed in the ordinary course of government operations and independent testing is no longer possible, confidence in the verdict is not

Similarly, Garcia's claim that his attorney's failed to investigate the chain of custody of the drugs, Pet. at 32, does not meet the standard.  Garcia strategized that if he called as witnesses the policemen in the chain of custody one might possibly have testified that the substance was not cocaine.  This is pure speculation.  No evidences suggests tampering with the drugs occurred while in transit between the police and the laboratory, thus it was reasonable for the attorney not to investigate every single individual in the chain of the custody.

Garcia is unable to meet <u>Strickland</u> test and his habeas corpus petition on this ground must be denied.

**III. CONCLUSION**

None of Garcia's claims establish that he is in custody in violation of the federal constitution or laws. Therefore, his petition for habeas corpus must be, and hereby is, DENIED.

---

undermined as there is a great likelihood that the tests were accurate. A government study of crime laboratory proficiency found that only "over 18 percent of the chemists failed to identify the sample drug accurately." M. Saks & R. Van Duizend, <u>The Use of Scientific Evidence in Litigation</u> 8 (National Center for State Courts, 1983) (citing J. Peterson, E. Fabricant, & K. Field, <u>Crime Laboratory Proficiency Testing Research Programs: Final Report</u> (U.S.G.P.O. 1978)).  This is insufficient to undermine confidence in the verdict here.

SO ORDERED.


/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE